UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUILLERMO RAMIREZ,

       Plaintiff,

v.                         Case No.  8:09-cv-321-T-33TBM

E.I. DUPONT DE NEMOURS AND
COMPANY,

       Defendant.
_____/

## ORDER

This matter is before the Court pursuant to Defendant's Motion to Require Evidence of Causation Pursuant to Lone Pine (Doc. # 14), filed on September 2, 2009, Defendant's Motion for Leave to File a Reply, or in the Alternative, for Oral Argument (Doc. # 19), filed on September 22, 2009, Defendant's Second Motion for Final Summary Judgment (Doc. # 22), filed on October 19, 2009, Defendant's Motion to Strike Declaration of Robert Bloome, D.O. (Doc. # 26), filed on November 12, 2009, and Plaintiff's Motion for Leave of Court to Extend Time for Expert Disclosure and File Expert Report, or in the Alternative, Motion for Voluntary Dismissal Without Prejudice (Doc. # 28), filed on November 24, 2009. All motions are ripe for the Court's review. For the reasons that follow, all

motions are due to be denied with the exception of Plaintiff's

motion for an extension of time regarding expert disclosure.

I.   **Background and Procedural History**

On February 2, 2009, Defendant removed this products

liability action to this Court from the Circuit Court for the

Thirteenth Judicial Circuit in and for Hillsborough County,

Florida on the basis of diversity of citizenship. 28 U.S.C. §§

1332, 1446.

Plaintiff alleges in his complaint that he used

Defendant's product, Benlate, in 1990 and 1991 in conjunction

with farming operations. (Doc. # 3 at ¶ 4).  Plaintiff

contends that Benlate is a defective product because it

contains a know carcinogen: Atrazine. (Id.)  Plaintiff was

diagnosed with kidney cancer in 2007, and "in 2008, was

diagnosed with brain cancer, chemically induced, which was

more likely than not caused by Atrazine in the Benlate." (Id.

at ¶ 5).

Count one of Plaintiff's complaint sounds in strict

liability and alleges that Defendant "was engaged in the

business of manufacturing chemical products for sale and

selling such products to . . . consumers without inspection

for defects." (Id. at ¶ 8).  Plaintiff further contends that

he "used quantities of Dupont's product, Benlate, according to Dupont's instructions and as a proximate result of such use, [he] has been diagnosed with cancer." (Id. at ¶ 9).

In count two, sounding in negligence, Plaintiff alleges that his injuries were proximately caused by Defendant's negligence because Defendant "negligently and carelessly failed to timely warn of the defective nature of Benlate to ultimate users and negligently and carelessly manufactured, sold, and distributed Benlate in a defective condition so that its negligence more likely than not caused kidney and brain cancer to the Plaintiff, even though he used the product, Benlate, according to the instructions of Dupont." (Id. at ¶ 11).

On February 27, 2009, Defendant filed its Answer and Affirmative Defenses. (Doc. # 4). Among other things, Defendant argued that Plaintiff's clams are barred by the statute of limitations, that Plaintiff has already been compensated for his injuries by Defendant in prior litigation, and that Plaintiff's claims are barred by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, "pursuant to the doctrine of preemption and the Supremacy Clause of the United States Constitution." (Doc. # 4 at ¶ 4).

On July 7, 2009, the Court issued its Case Management and Scheduling Order. (Doc. # 13).  Among other deadlines, the Court required Plaintiff to disclose his expert witnesses by October 1, 2009, set the discovery cut-off date as February 1, 2010, and set the dispositive motions deadline as March 1, 2010.  The case is currently on the July 2010 trial term.

## II.  Analysis

### A.    Defendant's Request for a Lone Pine Order

On June 11, 2009, Defendant filed its first motion for summary judgment, arguing, among other things, that Plaintiff has already been compensated for his injuries in prior litigation between the parties. (Doc. # 9).[1]  Thereafter, on September 2, 2009, Defendant filed its motion to require evidence of causation pursuant to Lone Pine (hereafter, the "Lone Pine motion" Doc. # 14).  In the Lone Pine motion, Defendant seeks an order requiring "Plaintiff to present admissible evidence supporting his claim that Benlate caused his alleged damages before any further discovery continues." (Doc. # 14 at 9).  Defendant bases its request on the decision

---

[1] The Court will not address Defendant's first motion for summary judgment (Doc. # 9) in this Order.

of <u>Lore v. Lone Pine Corp.</u>, No. L-33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Super. Ct. Nov. 18, 1986).

In <u>Lone Pine</u>, the plaintiffs sued 464 defendants for personal injury and property damage in a toxic-tort/pollution case. The Court entered a special case management and scheduling order requiring the plaintiffs to "provide sufficient information to establish a prima facie case" before the commencement of discovery. <u>Id.</u> at *1.

Among other things, the court required the plaintiffs to supply (1) their address, including lot number, for damaged property; (2) the report of an expert supporting each individual plaintiff's claim for diminution of property value; (3) facts regarding each individual plaintiff's personal exposure to toxic chemicals; and (4) reports of treating physicians supporting each plaintiff's claim of injury and causation. <u>Id.</u> at *3-4.

Defendant argues that a <u>Lone Pine</u> order is needed in the present case because "Plaintiff has not presented any evidence showing that Benlate or alleged contaminants in Benlate caused his injuries." (Doc. # 14 at 1). Plaintiff opposes the entry of a <u>Lone Pine</u> order, and this Court agrees that such an order is not warranted under the circumstances of this case.

In <u>Baker v. Chevron, USA, Inc.</u>, Case No. 1:05-cv-227, 2007 U.S. Dist. LEXIS 6601 (S.D. Ohio Jan. 30, 2007), a toxic-tort case, 360 Plaintiffs sued Chevron for personal injury and property damage resulting from Chevron's operation of a gasoline refinery. The court issued a <u>Lone Pine</u> order and noted that "[t]he basic purpose of a <u>Lone Pine</u> order is to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous claimants." <u>Id.</u> at *2.

Similarly, in <u>Abrams v. CIBA Specialty Chems. Corp.</u>, Case No. 08-68, 2008 U.S. Dist. LEXIS 86487 (S.D. Ala. Oct. 23, 2008), 270 plaintiffs sued multiple defendants for property damage in connection DDT emissions from a chemical manufacturing plant. In <u>Abrams</u>, the court entertained a request for a <u>Lone Pine</u> order and noted, "<u>Lone Pine</u> orders are 'pre discovery' orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." <u>Abrams</u>, at *19.

The <u>Abrams</u> court declined to issue a <u>Lone Pine</u> order because the properties of each plaintiff had already been tested for DDT and the defendants had received the reports

-6-

regarding DDT.  <u>Id.</u>  The court also declined to utilize a <u>Lone Pine</u> order because it, instead, utilized a group of "test plaintiffs" to streamline the administration of the case. <u>Id.</u>

The Court determines that Defendant's request for a <u>Lone Pine</u> order in this case, with a single plaintiff and single defendant, is patently unwarranted.  While Plaintiff claims that he has been injured by chemicals in Defendant's Benlate product, this is not a mass toxic-tort case, and there is no need for a specialized case management order to streamline or otherwise organize the issues presented in this case.  No further analysis of this issue is needed, and Defendant's motion for leave to file a reply brief regarding the issuance of a <u>Lone</u> Pine order, and in the alternative, motion for oral argument regarding <u>Lone Pine</u>, is also due to be denied.  Thus, the court denies the <u>Lone Pine</u> motion (Doc. # 14) and Defendant's related reply motion. (Doc. # 19).

### B.   <u>Robert Bloome, D.O.</u>

As noted, the Court's Case Management and Scheduling Order (Doc. # 13) required Plaintiff to disclose his expert witnesses and expert reports by October 1, 2009.  Plaintiff did not meet this deadline.  Accordingly, on October 19, 2009, Defendant filed its second motion for summary judgment. (Doc.

# 22).  The lynchpin of Defendant's argument in the second motion for summary judgment is the lack of an expert witness to substantiate Plaintiff's claims.  In its second motion for summary judgment, Defendant contends:

> Plaintiff alleges that Benlate (a fungicide product manufactured by Dupont) or contaminants in Benlate caused his kidney and brain cancers.  The deadline for disclosing experts has come and gone, and Plaintiff has not disclosed a single expert who will testify that Benlate or contaminants in Benlate caused his cancer.  This lack of evidence is not just limited to expert testimony. Plaintiff has no evidence establishing that Benlate caused his cancer, that the Benlate he may have been exposed to was contaminated, or that any contaminants in the Benlate caused his cancer.  In short, Dupont is entitled to summary judgment because Plaintiff has completely failed to establish that his cancer was caused by Benlate or any contaminants in Benlate.

(Doc. # 22 at 2).

In response to Defendant's motion for summary judgment, Plaintiff filed the untimely expert declaration of Robert Bloome, D.O. (Doc. # 25).  In his declaration, Dr. Bloome states that he has 28 years of experience in family practice, allergies, and environmental medicine, and has previously rendered "opinions of medical causation of physical conditions from environmental exposures." (Doc. # 25 at ¶ 2).  Dr. Bloome

examined Plaintiff as well as his medical records and conducted research regarding Benlate. (Id. at ¶ 4).

Dr. Bloome's declaration appears to contain some speculative and/or irrelevant information about Defendant and its products, which this Court will not consider here, but Dr. Bloome's declaration does contain the following pertinent opinion:

> Mr. Ramirez had his right kidney removed in 2007 due to diagnosis of Grawitz, clear cell carcinoma and granular cell carcinoma. He was later diagnosed and has received radiation treatment for a brain tumor, diagnosed as Schwannoma. Mr. Ramirez has no family history of cancer. While he smoked in the 1970's that has no significant impact on his cancer diagnosis. Therefore, based on my research, review of records, physical examination and detailed history, it is my opinion within a reasonable degree of medical probability that Mr. Ramirez [sic] cancerous right kidney tumor and brain tumor were caused by chemical exposure. Development of two different tumors indicates likely chemical causation. It is my further opinion within a reasonable degree of medical probability that the ingredients and/or contaminants of Benlate 50DF, i.e. Benomyl, Flusilazole, and Chlorothalonil, used in his farming operations more likely than not caused his cancer.

(Doc. # 25 at ¶¶ 7-8).

On November 12, 2009, Defendant moved to strike Dr. Bloome's affidavit as untimely and legally insufficient. (Doc. # 26). As to timeliness, Defendant argues, "without leave of

Court and almost one month after the expert witness disclosure deadline, Plaintiff filed the untimely declaration of Robert Bloome, D.O., (a doctor of osteopathy) in an attempt to save his case from summary judgment." (Doc. # 26 at 1). Defendant notes that Plaintiff has yet to tender an expert report.

Concerning the content of Dr. Bloome's affidavit, Defendant contends, to the extent it is Dr. Bloome's Rule 26(a)(2), Fed.R.Civ.P. expert report, it is procedurally defective. Among other things, Defendant notes that the affidavit does not (1) state whether the opinions contained therein are all of the opinions of the witness; (2) specifically identify the data or information considered by the witness; (3) identify any exhibits that will be used to summarize or support the opinion of the witness; (4) identify publications of the witness; and (5) list all of the cases in which the witness has testified as an expert. (Doc. # 26).

On November 24, 2009, Plaintiff filed his motion for leave of court to extend time for expert disclosure, and in the alternative, motion for voluntary dismissal without prejudice. (Doc. # 28). Plaintiff does not dispute that his expert's affidavit is untimely and somewhat deficient. Plaintiff indicates, "Since the removal of the kidney,

Plaintiff has been in and out of hospitals for a variety of problems, including the diagnosis and treatment of an inoperable brain tumor and most recently, spots on the lungs, heart problems, colon problems, and others." (Doc. # 28 at ¶ 1).

Plaintiff argues that "due to the nature of this claim, the difficulty in obtaining investigative material to assist in the proof of causation, and the difficulty in finding experts willing to testify in this matter coupled with Plaintiff's inability to pay for those costs, Plaintiff has been unable to timely perform discovery in this matter." Id. at ¶ 2). Plaintiff also notes that he was unable to meet the expert report deadline because, prior to the expiration of the deadline, Dr. Bloome was involved in a "very serious motor vehicle accident" (Id. at ¶ 4).

Thus, Plaintiff seeks leave to file the expert disclosure, report, and amended declaration of Dr. Bloome to fulfill the deficiencies of compliance with Rule 26 identified by Defendant in the motion to strike. In the instance that the requested extension is denied by the Court, Plaintiff requests leave to voluntarily dismiss this case without

prejudice so that Plaintiff can proceed anew, with proper expert disclosures.

After due consideration, the Court determines that it is appropriate to grant Plaintiff's motion for leave of court to file the expert disclosure, report, and amended declaration of Dr. Bloome. Plaintiff shall have ten days from the date of this Order to file these documents. While the Court certainly does not condone Plaintiff's failure to comply with the expert disclosure deadlines, the Court determines that his tardy disclosure of Dr. Bloome was not an egregious violation. The Court also determines that voluntary dismissal without prejudice is not an appropriate avenue here due to Plaintiff's deteriorating health.

The Court's decision to grant Plaintiff's extension motion moots Defendant's motion to strike and Defendant's second motion for summary judgment based on the absence of expert testimony in support of Plaintiff's claims.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion to Require Evidence of Causation Pursuant to <u>Lone Pine</u> (Doc. # 14) is **DENIED.**

(2) Defendant's Motion for Leave to File a Reply, or in the Alternative, for Oral Argument (Doc. # 19) is **DENIED.**

(3) Defendant's Second Motion for Final Summary Judgment (Doc. # 22) is **DENIED.**

(4) Defendant's Motion to Strike Declaration of Robert Bloome, D.O. (Doc. # 26) is **DENIED.**

(5) Plaintiff's Motion for Leave of Court to Extend Time for Expert Disclosure and File Expert Report, or in the Alternative, Motion for Voluntary Dismissal Without Prejudice (Doc. # 28) is **GRANTED** as specified above. Plaintiff shall file his expert-related documents within ten days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of January 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record