UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUILLERMO RAMIREZ,

  Plaintiff,

v.  Case No. 8:09-cv-321-T-33TBM

E.I. DUPONT DE NEMOURS AND
COMPANY,

  Defendant.
_____/

**ORDER**

This matter is before the Court pursuant to Defendant E.I. DuPont De Nemours and Company's motion for summary judgment (Doc. # 9), which was filed on June 11, 2009. Plaintiff Guillermo Ramirez filed a response in opposition to the motion for summary judgment (Doc. # 12) on June 22, 2009. For the reasons that follow, the motion for summary judgment is due to be denied without prejudice as prematurely filed.

**I. Background and Procedural History**

On February 2, 2009, Defendant removed this products liability action to this Court from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida on the basis of diversity of citizenship. 28 U.S.C. §§ 1332, 1446.

Plaintiff alleges in his complaint that he used Defendant's product, Benlate, in 1990 and 1991, in conjunction with farming operations. (Doc. # 3 at ¶ 4). Plaintiff contends that Benlate is a defective product because it contains a know carcinogen: Atrazine. (Id.) Plaintiff was diagnosed with kidney cancer in 2007, and "in 2008, was diagnosed with brain cancer, chemically induced, which was more likely than not caused by Atrazine in the Benlate." (Id. at ¶ 5).

Count one of Plaintiff's complaint sounds in strict liability and alleges that Defendant "was engaged in the business of manufacturing chemical products for sale and selling such products to . . . consumers without inspection for defects." (Id. at ¶ 8). Plaintiff further contends that he "used quantities of Dupont's product, Benlate, according to Dupont's instructions and as a proximate result of such use, [he] has been diagnosed with cancer." (Id. at ¶ 9).

In count two, sounding in negligence, Plaintiff alleges that his injuries were proximately caused by Defendant's negligence because Defendant "negligently and carelessly failed to timely warn of the defective nature of Benlate to ultimate users and negligently and carelessly manufactured,

sold, and distributed Benlate in a defective condition so that its negligence more likely than not caused kidney and brain cancer to the Plaintiff, even though he used the product, Benlate, according to the instructions of Dupont." (Id. at ¶ 11).

On February 27, 2009, Defendant filed its answer and affirmative defenses, which hint at the substance of the instant motion for summary judgment. (Doc. # 4). Among other defenses, Defendant asserts that Plaintiff has already been compensated for his injuries by Defendant in prior litigation: "Plaintiff's claims are barred in whole or in part as a result of payment, release, accord and satisfaction, and previous settlement of this claim." (Doc. # 4 at 2).

Defendant also contends that "Plaintiff has no right to recover, or a verdict should be reduced by, the value of any benefits received by Plaintiff, paid on behalf of Plaintiff, or available to Plaintiff, from any collateral source." (Id. at 3.) Thereafter, on June 11, 2009, Defendant filed the instant motion for summary judgment.

## II. Analysis

By its motion for summary judgment, Defendant argues that Plaintiff has released Defendant from any and all liability,

-3-

including liability for his personal injuries. Defendant argues as follows:

> Plaintiff twice sued DuPont complaining that Benlate damaged his crops. DuPont settled the first case on January 30, 1992, paying the Plaintiff and a related corporation a total of $600,000.00. Plaintiff signed a general release of all property damages caused to his farmland. Notwithstanding the January 30, 1992 settlement, Plaintiff sued DuPont again in July of 1992 claiming further damage caused by Benlate. That case resulted in a 1994 settlement agreement in which Plaintiff released DuPont from Plaintiff's known or unknown claims, including any personal injury claims.

(Doc. # 9 at 1).

Plaintiff opposes summary judgment on multifarious grounds. Plaintiff asserts that the general releases that he signed (there appear to be at least four release documents at issue) are void as against public policy. In the alternative, he asserts that his personal injuries, including cancer, did not exist at the time that the general releases were signed, and therefore, are not covered by the releases. In addition, Plaintiff contends that the general releases are voidable due to either mutual mistake or unilateral mistake.

In addition, Plaintiff has filed a declaration in which he states that he received no money from DuPont in prior

settlements and that all money paid by Dupont was for property damage, not personal injuries:

>    Declarant entered into a partnership with L.B. Growers and Trading Co., Inc., (LBGT), where Declarant had the farming expertise and LBGT supplied the financial consideration.
> . . .
>    In reference to settlements with DuPont, of which the Declarant has no records . . . the following payments were made: A. May 1991, $200,000, Release and check only to LBGT and only signed by LBGT. Declarant did not receive any money from this. B. January 1992. $400,000. Payable to LBGT and Declarant. Declarant did not receive any money from this. C. May 1992. $600,000. Declarant signs a General Release on behalf of himself and LBGT. Declarant did not receive any money from this. D. February 1994. $110,000. Declarant and LBGT sign a General Release. Declarant did not receive any money from this.
>    At the time of the above settlements with Dupont and at the time the subject Releases were signed, no one discussed with Declarant any potential for personal injury to him or others from the use of the DuPont products, such as Benlate. DuPont paid nothing in the above settlements except for property damage.
> . . .
>    Declarant had no known injury or potential for injury at the time the Release was signed. Even if Declarant was examined by a doctor at the time of the settlement, which he was not, Declarant had no hint of physical problems, no symptoms and no physical evidence that there was a physical injury until 2007.
> . . . .
>    Declarant had no control over any of the above settlements. Declarant did not have equal bargaining power at the time of the settlements because Declarant was at the mercy of not only

DuPont but also Declarant's financial partner, LBGT, since Declarant's entire livelihood for himself, his wife, and his minor children were totally dependent on the crops and the farmland destroyed by the use of the contaminated Benlate, requiring Declarant to agree to whatever was offered. Declarant was the only one of the two partners exposed to the Benlate and other DuPont products.

(Doc. # 12-1 at 1-2).

In this case, Plaintiff signed several general releases. It appears that DuPont relies primarily on the "general release of all claims" executed by Plaintiff on January 25, 1994. (Doc. # 9-7). That eight-page release reads in pertinent part:

> [T]he Plaintiffs completely release and forever discharge Defendants . . . from any and all past, present, or future claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses, compensation or punitive damages, which the Plaintiffs now have, could have had, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, or which is the subject of the Plaintiffs' use of DuPont Benomyl products including, without limitation, any and all known or unknown claims for property damage (present or future), loss of profits, business interruption, damage to goodwill, other consequential damages, interest or for **bodily and personal injury which have resulted or may result from the Plaintiffs' use of DuPont Benomyl products**.
> . . . .
> The Plaintiffs hereby acknowledge and agree that the Release set forth in paragraph 1 hereof is a general release. Plaintiffs expressly waive and

>     assume the risk of any and all claims for damages
>     **existing as of this date** but of which the
>     Plaintiffs do not know or suspect to exist, whether
>     through ignorance, oversight, error, negligence, or
>     otherwise, and which, if known, would materially
>     affect the Plaintiffs' decision to enter into this
>     release.

(Doc. # 9-7) (emphasis added).

Plaintiff asserts that his present injuries, specifically cancer of the brain and kidney, are not covered by the general release because such injuries did not exist at the time the release was executed. In addition, Plaintiff contends, "The General Release relied upon by DuPont is too vague to include a knowing rejection of bodily injury damages which were unable to be discovered at the time the release was executed." (Doc. # 12 at 1).

Plaintiff presents factual arguments concerning mutual and unilateral mistake as a basis for rescission of the release or releases in question.[1] At this point, the Court

---

[1] In this diversity jurisdiction case, the Court applies the substantive law of Florida. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Florida follows the minority rule that a contract may be rescinded on the basis of a unilateral mistake under certain circumstances. Md. Cas. Co. v. Krasnek, 174 So. 2d 541, 542 (Fla. 1965). In Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1291 (11th Cir. 1998), the court explained, "Florida case law allows for application of the unilateral mistake doctrine where all of the following
(continued...)

determines that it is appropriate to deny DuPont's motion for summary judgment without prejudice. Recently, DuPont filed a motion requesting the extension of certain discovery deadlines. (Doc. # 35). Therein, DuPont indicated that it has deposed Plaintiff once to preserve his testimony and that a second deposition of Plaintiff may be scheduled. DuPont also noted: "Both sides must conduct interviews and depositions of fact witnesses. Also, DuPont has served additional subpoenas on medical providers who were identified as a result of the first waves of medical records DuPont received. Those medical records must still be reviewed before Plaintiff's treating doctors can be deposed. In short, a significant amount of expert and factual discovery remains to be completed." (Doc. # 35).

Summary judgment determinations are made after considering the complete record. Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[1](...continued)
conditions are met: (1) the mistake goes to the substance of the agreement, (2) the error does not result from an inexcusable lack of due care, and (3) the other party has not relied upon the mistake to his detriment." The <u>Roberts & Schaefer</u> court also remarked that "application of the unilateral mistake doctrine is a matter of equity." <u>Id.</u>

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The dispositive motions deadline has not yet elapsed in this case. Because, to date, DuPont has filed several motions for summary judgment, the Court surmises that additional dispositive motion practice is a distinct possibility.

The Court declines to rule on a motion for summary judgment with a "significant amount of expert and factual discovery" outstanding. Instead, the Court's procedural preference, which is also the most efficient use of judicial resources, is for DuPont to file an omnibus motion for summary judgment following the completion of all discovery. This determination is consistent with the court's ruling in Blumel v. Mylander, 919 F. Supp. 423, 428 (M.D. Fla. 1996), that Rule 56 "implies [that] district courts should not grant summary judgment until the non-movant has had an adequate opportunity for discovery." Furthermore, the Eleventh Circuit has decisively determined that "summary judgment may only be decided upon an adequate record." Snook v. Trust Co. of Ga. Bank, 859 F.2d 865, 870 (11th Cir. 1988).

Thus, the Court denies the motion for summary judgment without prejudice as prematurely filed based on the fact that significant discovery remains to be completed in this case.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant E.I. DuPont De Nemours and Company's motion for summary judgment (Doc. # 9) is **DENIED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of January 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record