UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUILLERMO RAMIREZ,

    Plaintiff,

v.                                   Case No. 8:09-cv-321-T-33TBM

E.I. DUPONT DE NEMOURS AND
COMPANY,

    Defendant.
_____/

**ORDER**

This matter is before the Court pursuant to Defendant's Motion to Exclude Causation Testimony of Robert Bloome (Doc. # 54) and Motion for Summary Judgment (the "Third Motion for Summary Judgment" Doc. # 55), both filed on May 28, 2010. Plaintiff filed a Response in Opposition to both Motions on June 28, 2010. (Doc. # 60). Thereafter, on July 13, 2010, Defendant filed a Reply (Doc. # 64). For the reasons that follow, the Court determines that a Daubert hearing is required in order to address the aforementioned motions.

**I.    Background and Procedural History**

On February 2, 2009, Defendant removed this products liability action to this Court from the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County,

Florida on the basis of diversity of citizenship. 28 U.S.C. §§ 1332, 1446.

Plaintiff alleges in his complaint that he used Defendant's product, Benlate, in 1990 and 1991, in conjunction with farming operations. (Doc. # 3 at ¶ 4). Plaintiff contends that Benlate is a defective product because it contains a know carcinogen: Atrazine. (Id.) Plaintiff was diagnosed with kidney cancer in 2007, and "in 2008, was diagnosed with brain cancer, chemically induced, which was more likely than not caused by Atrazine in the Benlate." (Id. at ¶ 5).

Count one of Plaintiff's complaint sounds in strict liability and alleges that Defendant "was engaged in the business of manufacturing chemical products for sale and selling such products to . . . consumers without inspection for defects." (Id. at ¶ 8). Plaintiff further contends that he "used quantities of Dupont's product, Benlate, according to Dupont's instructions and as a proximate result of such use, [he] has been diagnosed with cancer." (Id. at ¶ 9).

In count two, sounding in negligence, Plaintiff alleges that his injuries were proximately caused by Defendant's negligence because Defendant "negligently and carelessly

failed to timely warn of the defective nature of Benlate to ultimate users and negligently and carelessly manufactured, sold, and distributed Benlate in a defective condition so that its negligence more likely than not caused kidney and brain cancer to the Plaintiff, even though he used the product, Benlate, according to the instructions of Dupont." (Id. at ¶ 11).

On February 27, 2009, Defendant filed its Answer and Affirmative Defenses. (Doc. # 4). Among other things, Defendant argued that Plaintiff's claims are barred by the statute of limitations, that Plaintiff has already been compensated for his injuries by Defendant in prior litigation, and that Plaintiff's claims are barred by the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, "pursuant to the doctrine of preemption and the Supremacy Clause of the United States Constitution." (Doc. # 4 at ¶ 4).

On June 11, 2009, Defendant filed its First Motion for Summary Judgment, arguing, among other things, that Plaintiff has already been compensated for his injuries in prior litigation between the parties (Doc. # 9). On January 22, 2010, the Court denied Defendant's First Motion for Summary

Judgment without prejudice, finding that the motion was prematurely filed. (Doc. # 36).

On September 2, 2009, Defendant filed its Motion to Require Evidence of Causation Pursuant to <u>Lore v. Lone Pine Corp.</u>, No. L-33606-85, 1986 N.J. Super. LEXIS 1626 (N.J. Super. Ct. Nov. 18, 1986). (Doc. # 14). In the <u>Lone Pine</u> motion, Defendant sought an order requiring "Plaintiff to present admissible evidence supporting his claim that Benlate caused his alleged damages before any further discovery continues." (Doc. # 14 at 9). The Court denied the <u>Lone Pine</u> motion on January 8, 2010, finding that, in this single plaintiff, single defendant case, a <u>Lone Pine</u> order was unwarranted. (Doc. # 32 at 7).

On October 19, 2009, Defendant filed its Second Motion for Final Summary Judgment arguing "the deadline for disclosing experts has come and gone, and plaintiff has not disclosed a single expert who will testify that Benlate or contaminants in Benlate caused his cancer." (Doc. # 22 at 1). Plaintiff tendered the untimely expert declaration of Robert Bloome, D.O., (Doc. # 25) in response to the Second Motion for Summary Judgment on October 29, 2009, and, on November 12,

2009, Defendant filed its Motion to Strike the Declaration of Dr. Bloome, D.O. (Doc. # 26).[1]

On January 8, 2010, the Court denied Defendant's Motion to Strike the Declaration of Dr. Bloome and also denied Defendant's Second Motion for Summary Judgment. (Doc. # 32).[2] On January 18, 2010, with leave of Court, Plaintiff filed the expert disclosure, report and expert-related documents of Dr. Bloome. (Doc. # 33). Once again, Defendant moves to exclude Dr. Bloome's testimony and, predicated on the assumption that the Court will exclude Dr. Bloome, a motion for summary judgment based on Plaintiff's failure to come forward with expert testimony for trial.

Defendant seeks an order barring Dr. Bloome from giving expert testimony during the trial of this case. Defendant argues that Dr. Bloom is not qualified to render expert

---

[1] The expert disclosure deadline passed on October 1, 2009. (Doc. # 13).

[2] The Court noted in its January 8, 2010, Order "While the Court certainly does not condone Plaintiff's failure to comply with the expert disclosure deadlines, the Court determines that his tardy disclosure of Dr. Bloome was not an egregious violation." (Doc. # 32 at 12). In addition, since the Second Motion for Summary Judgment was predicated on the absence of an expert to testify on Plaintiff's behalf, the Court denied the Second Motion for Summary Judgment. (Id.)

testimony as to causation and that Dr. Bloome's opinion lacks the indicia of reliability necessary to survive Daubert and Rule 702.

**II. <u>Daubert Requirements</u>**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of the Court's landmark case of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). In <u>Daubert</u>, the Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." <u>Id.</u> at 589; <u>see</u> <u>also</u> <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004)("The district court's role is especially significant since the expert's opinion can be both powerful and quite misleading because of the difficulty in

-6-

evaluating it.  Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case"). In <u>Kuhmo Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999), the Court extended its reasoning in <u>Daubert</u> to non-scientist experts.

As stated in the Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence, "A review of the case law after <u>Daubert</u> shows that the rejection of expert testimony is the exception rather than the rule."  <u>See</u> Advisory Committee Notes to the 2000 Amendment to Rule 702. Further, "<u>Daubert</u> did not work a 'seachange over federal evidence law,' and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." <u>Id.</u> (quoting <u>United States v. 14.38 Acres of Land</u>, 80 F.3d 1074, 1078 (5th Cir. 1996)).

In addition, the trial judge is afforded broad discretion in deciding <u>Daubert</u> issues.  As stated in <u>Kumho Tire Co.</u>, the trial judge has the discretion "both to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the

expert's reliability arises." 526 U.S. at 152.  Further, the Kuhmo Tire Co. Court admonished that "the Rules seek to avoid 'unjustifiable expense and delay' as part of their search for 'truth' and the 'just determination' of proceedings." Id. at 152-153 (quoting Fed. R. Evid. 102).

In Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit set forth a three-pronged approach to qualifying expert witnesses:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Rink, 400 F.3d at 1291-1292 (internal citations omitted).  The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. Rink, 400 F.3d at 1292; see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)("The burden of laying the proper foundation for the admission of the expert testimony is on the

party offering the expert, and admissibility must be shown by a preponderance of the evidence").

### **Dr. Bloom's Qualifications**

The parties present Dr. Bloome to the Court in diametrically opposed submissions. In its Motions, Defendant denigrates Dr. Bloome's credentials and experience and attempts to discredit Dr. Bloome, among other things, because he is a hospitalist. Defendant argues, "Merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." (Doc. # 54 at 3)(citing Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001).

Defendant further argues:

> Dr. Bloome is not qualified because he does not have the specialized knowledge, skill, experience, training or education to testify that Plaintiff's renal cancer and brain tumor were caused by chemical exposure. Dr. Bloome is not a toxicologist. He is an osteopathic physician who, until recently, specialized in family medicine, allergies, and environmental medicine.

(Doc. # 54 at 4). Defendant also attempts to cast doubt on Dr. Bloome because he is not an oncologist.

Plaintiff, on the other hand, filed the declaration and Rule 26(A)(2)(b) written report of Dr. Bloome. (Doc. # 25).

-9-

According to these documents, Dr. Bloom is a board certified internal medicine physician with 28 year of experience "in family practice, allergies, and environmental medicine." (Doc. # 33 at 2). In addition, as submitted by Plaintiff, Dr. Bloome "has over 25 years experience in environmental medicine and was the major presenter for over 25 years on environmental topics, including pollution and causation from pollution in Huntsville Alabama. For 4-5 years, he was a primary physician at the Cancer Center in Ft. Payne AL. where his primary function was diagnosing and treating patients with cancer, and also referring them to oncologists." (Doc. # 60 at 5).

The Court agrees with Defendant that Dr. Bloome's status as a physician, alone, is not sufficient to qualify him as an expert in this case; however, Plaintiff submits to this Court that Dr. Bloome's practice areas, particularly environmental medicine, and his experience diagnosing cancer is relevant to the allegations in this suit. Specifically, Plaintiff argues, "Dr. Bloome is a treater, an 'in the trenches' physician, who is a primary care physician. He is not an oncologist specializing in the treatment of cancer, but rather . . . his practice is conducting the diagnosis, and then referring the patient to the proper specialist for treatment." (Doc. # 60 at

4). Plaintiff also notes, "it is the diagnosis of the condition, not the treatment, which is paramount in the instant matter." (Id.)

However, in Defendant's reply, Defendant challenges that Dr. Bloome treated cancer patients in Fort Payne, Alabama or anywhere else. (Doc. # 64 at 1). Defendant remarks that Dr. Bloome's employment at the Ft. Payne cancer center is not on Dr. Bloome's C.V. The Court's review of Dr. Bloome's C.V. indicates that he has an active "hospital staff membership" at the DeKalb Baptist Regional Medical Center in Fort Payne, Alabama, however, this Court is not certain as to whether this employment involved cancer treatment. (Doc. # 25 at 8).

At this point, the Court is faced with making a credibility determination as to Dr. Bloome's stated credentials, and the Court cannot do so absent a hearing. Accordingly, the Court will schedule a <u>Daubert</u> hearing to explore Dr. Bloome's credentials, methodology, and to determine whether his testimony will assist the trier of fact.[3]

---

[3] At the <u>Daubert</u> hearing, the Court will require the parties, among other things, to address the requirements for expert testimony as set forth in the case of <u>McClain v.</u>
(continued...)

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Court will hold a <u>Daubert</u> hearing in order to address Defendant's Motion to Exclude Causation Testimony of Robert Bloome (Doc. # 54) and Defendant's Motion for Summary Judgment (Doc. # 55).

(2) The Court will issue a separate notice for the <u>Daubert</u> hearing.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>23rd</u> day of July 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

[3](...continued)
<u>Metabolife Int'l, Inc.</u>, 401 F.3d 1233 (11th Cir. 2005).