```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

GUILLERMO RAMIREZ,

        Plaintiff,

v.                                  Case No. 8:09-cv-321-T-33TBM

E.I. DUPONT DE NEMOURS AND
COMPANY,

        Defendant.
_____/

**ORDER**

This matter is before the Court pursuant to Defendant's Motion in Limine #8 to Preclude Untimely and Improper Opinions and Inflammatory Comments by Plaintiff's Expert Dr. Robert Bloome (Doc. # 92). Plaintiff filed a Response in Opposition (Doc. # 107). For the reasons that follow, the Motion will be denied in part.

**Analysis**

Defendant seeks an order barring Plaintiff's expert witness from testifying at trial to any opinions that were not timely disclosed (i.e., Plaintiff's continuing medical diagnosis and treatment); testifying at trial to improper opinions that the law prohibits (i.e., discussing fraud-on-the-EPA); and making inflammatory comments.

**A.    Plaintiff's Medical Treatment**

The Court has already considered and rejected Defendant's

position on presentation of evidence concerning Plaintiff's deteriorating medical condition.  Specifically, on September 1, 2010, this Court entered an Order (Doc. # 124) denying Defendant's Motion to preclude evidence of medical diagnoses and treatment following close of discovery.  The analysis provided in that order applies here.  There is no surprise, prejudice, or ambush regarding Plaintiff's medical condition, and Dr. Bloome may discuss Plaintiff's ongoing medical condition, treatment, and diagnosis.  Furthermore, if it is Dr. Bloome's opinion that Plaintiff may succumb to cancer, it would not be "inflammatory" for Dr. Bloome to say so.

In addition, the Court will not bar Dr. Bloome from expressing his opinions regarding Benlate, cancer, discussions with other physicians, and physical examinations of Plaintiff just because those subjects are not described in detail in Dr. Bloome's expert report, as requested by Defendant.  Dr. Bloome's expert report generally discusses his testimony and opinions, and he is permitted to expound upon his opinion during trial.  It is not the expert's role to read from a script (that it, their expert report).

**B.     Fraud-on-the-EPA**

The next category of evidence Defendant seeks to exclude is Dr. Bloome's discussion of DuPont's interactions with the

2

Environmental Protection Agency ("EPA"). Defendant argues, "Dr. Bloome cannot testify that the EPA was defrauded into approving certain chemicals for registration and use." (Doc. # 92 at 6). Defendant asserts that evidence of fraud-on-the-EPA is inadmissible.

A number of courts, including the United States Supreme Court, have weighed in on the kind of evidence at bar. In <u>Buckman Co. v. Plaintiffs' Legal Committee</u>, 531 U.S. 341 (2001), the Court expressly preempted fraud-on-the-FDA claims, noting "policing fraud against federal agencies is hardly a field which the States have traditionally occupied." <u>Id.</u> at 347 (internal citations omitted). Among other things, the Court determined that the FDA has its own, ample, power to police fraud, that private suits for fraud are neither necessary nor appropriate to deter and punish such fraud, and that such suits are in conflict with federal law. <u>Id.</u> at 348.

The preemption of fraud-on-the-FDA claims analysis applies with equal force to preempt fraud-on-the-EPA claims because both the FDA and the EPA are federal agencies equipped with adequate power to deter and punish fraud. <u>Nathan Kimmel, Inc. v. DowElanco</u>, 275 F.3d 1199, 1206 (9th Cir. 2002)(finding that the EPA is empowered to deter and punish fraud using particular methods designed to achieve a delicate balance of

3

statutory objectives)(quotation marks omitted).

However, it should be noted that Plaintiff in this case has not asserted a claim against DuPont for fraud upon the EPA. Rather, Plaintiff seeks to introduce evidence that "the Plaintiff was misled by the failure of DuPont to properly label Benlate DF or disclose its true ingredients and/or contamination to the EPA." (Doc. # 107 at 4). Plaintiff further remarks, "If DuPont would have complied with the EPA reporting, labeling, and disclosure requirements, Benlate DF would never have been introduced into the stream of commerce or sold to the Plaintiff, and Plaintiff would not have been exposed to its dangerous, lethal contents." (Id.)

The Court determines that Plaintiff's stated purposes for offering the evidence in question are similar to the type of claims described and preempted in Buckman, and, therefore, that barring the evidence in question is likely required. See also In re Baycol Prods. Litig., 532 F. Supp.2d 1029 (granting motion in limine regarding expert testimony about the sufficiency of Bayer's submissions to the FDA and stating, "to the extent Dr. Kapit's testimony is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA, the testimony must be excluded. The Court will leave to the respective trial courts the

4

admissibility determination of such testimony to the extent it is offered to support a claim that the medical community, treating physicians or patients were misled by Bayer's alleged failure to submit information to the FDA.")

However, before the Court can reach a final ruling on the issue of whether Dr. Bloome can testify about fraud-on-the-EPA, the Court must be advised by the parties as to whether such fraud did, in fact, occur. In Buckman, while the Court barred fraud-on-the-agency type claims, it was only addressing claims where such fraud was in dispute, and not cases in which the agency acknowledged that it had been defrauded. The Court noted:

> This would be a different case if, prior to the instant litigation, the FDA had determined that petitioner had committed fraud . . . and had taken the necessary steps to remove the harm-causing product from the market. Under those circumstances, respondent's state-law fraud claim would not depend upon speculation as to the FDA's behavior in a counterfactual situation but would be grounded in the agency's explicit actions . . . If the FDA determines both that the fraud has occurred and that such fraud requires removal of a product from the market, state damages remedies would not encroach upon, but would rather supplement and facilitate, the federal enforcement scheme.

Buckman, 531 U.S. at 354 (J. Stevens concurring).

Thus, if Plaintiff merely speculates that DuPont may have engaged in some type of fraud, the Court will not permit such

5

evidence. However, if it is undisputed that DuPont defrauded the EPA, the Court will allow the presentation of that evidence unless DuPont conclusively establishes that it should be excluded. The parties shall brief the Court on this issue outside the presence of the jury at a time that is convenient for the parties and the Court. Until the Court decides this issue, the parties shall refrain from commenting on this evidence in the presence of the jury.

C.   **"Inflammatory" Statements**

Defendant also seeks an order barring Dr. Bloome from making inflammatory comments about Benlate. Specifically, Defendant does not want Dr. Bloome to testify that Benlate damaged crops, caused certain birth defects, and was banned by the European Union.

The basis of Plaintiff's suit is that his use of Banlate caused him to develop cancer. Dr. Bloome has described Benlate during his deposition and among other things, Dr. Bloome has testified that Benlate caused crop damage, that it caused children to be born with birth defects (being born without eyes) and that the European Union has banned the use of Atrazine (a chemical Plaintiff alleges was in his Benlate) "because it is hazardous and causes cancer in humans." (Doc. # 92 at 10).

6

With respect to the EU's ban on certain chemicals, Defendant is concerned that Dr. Bloome will rely on an article published in the International Journal of Occupational and Environmental Health, authored by Jennifer Beth Sass and Aaron Colangelo, entitled "European Union Bans Atrazine, While the United States Negotiates Continued Use." Vol. 12 No. 3 260-67 (July/Sept. 2006).  Defendant indicates, "Dr. Bloome has no direct knowledge of any of this and, if permitted at trial, he will likely just parrot and be an impermissible conduit for the opinions expressed in that article." (Doc. # 92 at 6).

Upon due consideration, the Court is not inclined to bar Dr. Bloome from offering his expert opinions on Benlate if, in fact, his opinions are based on solid science.[1]  That is to say, if Dr. Bloome has fabricated these facts and cannot substantiate them, the Court will not permit him to so testify.  However, if Dr. Bloome can support his opinions about Benlate, the Court sees no reason to bar him from stating such opinions merely because they may be damaging to DuPont.  However, to the extent that Dr. Bloome relies on any

---

[1] While the Court has determined that it will allow Dr. Bloome to describe Benlate, including that it damaged crops, the Court will not permit Dr. Bloome to testify about subsequent remedial measures by DuPont or settlement negotiations, both barred by Orders of this Court and Rules 406 and 408 of the Federal Rules of Evidence.

7

study or publication, "he must not exceed the limitations the authors themselves place on that study.  That is, he must not draw overreaching conclusions." <u>In re Accutane Prods. Liab. Litig.</u>, 8:04-md-2523-T-30TBM, MDL: 1626, 2009 U.S. Dist. LEXIS 77662, at *20 (M.D. Fla. Aug. 11, 2009).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

Defendant's Motion in Limine #8 to Preclude Untimely and Improper Opinions and Inflammatory Comments by Plaintiff's Expert Dr. Robert Bloome (Doc. # 92) is **DENIED in PART.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>3rd</u> day of September 2010.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record

8