UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GUILLERMO RAMIREZ,

                    Plaintiff,

v.                                          Case No.  8:09-cv-321-T-33TBM

E.I.  DUPONT  DE  NEMOURS  AND
COMPANY,

                    Defendant.

_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiff
Guillermo Ramirez's Rule 50(b) Motion for Judgment as a Matter
of Law and New Trial on Damages, or in the Alternative, Rule
50(b) and Rule 59(a) Motion for New Trial (Doc. # 165), which
was filed on October 15, 2010.  On October 29, 2010, E.I. du
Pont de Nemours and Company filed its response in opposition
to the motion on October 29, 2010. (Doc. # 173).

For the reasons that follow, this Court denies Ramirez's
motion.

**I.    Background**

On  February  2,  2009,  DuPont  removed  this  products
liability action to this Court from the Circuit Court for the
Thirteenth Judicial Circuit in and for Hillsborough County,
Florida on the basis of diversity of citizenship. 28 U.S.C. §§
1332, 1446.

Ramirez alleged in his complaint that he used DuPont's product, Benlate, in 1990 and 1991, in conjunction with farming operations. (Doc. # 3 at ¶ 4). Ramirez asserted that Benlate is a defective product because it contains a known carcinogen: Atrazine. (Id.) Ramirez was diagnosed with kidney cancer in 2007, and "in 2008, was diagnosed with brain cancer, chemically induced, which was more likely than not caused by Atrazine in the Benlate." (Id. at ¶ 5). Ramirez's complaint sounded in strict liability and negligence.

After considerable motion practice, the case proceeded to a jury trial from September 7, 2010, to September 14, 2010. The jury returned a verdict favorable to DuPont (Doc. # 159), and the Court entered its judgment in DuPont's favor on September 17, 2010. (Doc. # 163).

Ramirez filed the present motion on October 15, 2010, requesting "judgment as a matter of law on the issue of legal cause under strict liability and negligence with a new trial on damages. Alternatively, Plaintiff requests a new trial on a legal cause and damages." (Doc. # 165 at 10).

## II. Legal Standard

### A. Motion for Judgment as a Matter of Law

Rule 50(a) of the Federal Rules of Civil Procedure permits the court to grant judgment as a matter of law against

2

a party, "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). The Eleventh Circuit provided detailed analysis of Rule 50 of the Federal Rules of Civil Procedure in Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241 (11th Cir. 2001):

> A motion for judgment as a matter of law shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment. This motion can be renewed after trial under Rule 50(b), but a party cannot assert grounds in the renewed motion that it did not raise in the earlier motion. The rule protects the non-moving party's right to cure deficiencies in the evidence before the case is submitted to the jury. The moving party cannot ambush the court and opposing counsel after the verdict when the only remedy is a completely new trial.

Id. at 1245 (internal citations omitted).

Courts should grant judgment as a matter of law only "if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Id. at 1246. Stated another way, "Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). Further, in conducting a Rule 50 analysis, this Court must refrain from invading the province of the jury: "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." _Id._ at 1193 (internal citations omitted).

> **B.   Motion for a New Trial**

Rule 59 of the Federal Rules of Civil Procedure governs motions for a new trial and generally provides that a new trial may be granted "on all or some of the issues--and to any party . . . After a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court." _Id._

The Supreme Court noted that a party may seek a new trial on grounds that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." _Montgomery Ward & Co. v. Duncan_, 311 U.S. 243, 251 (1940).

## III. **Analysis**

Ramirez's motion presents blended arguments concerning

relief under Rules 50(a) and 59.[1]   Essentially, Ramirez contends (1) that the verdict was inconsistent; (2) that the verdict was entered against the great weight of the evidence; and (3) that Samuel M. Cohen, M.D. Ph.D., one of DuPont's expert witnesses, was not qualified pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). The Court will address each contention below.

### A.   <u>The Verdict</u>

Ramirez argues that the verdict was inconsistent because it determined that DuPont's product, Benlate, was defective, but that such product was not the cause of Ramirez's injuries. Ramirez's argument lacks merit because defect and causation are separate elements of the causes of action at issue, and it was proper for the jury to evaluate them separately. As suggested by DuPont, "the jury could have determined that while Benlate may have been contaminated and may have caused plant damage (and was therefore defective) it did not cause Plaintiff's injuries." (Doc. # 173 at 2). DuPont's argument is well taken as to both of Ramirez's causes of action.

---

[1] DuPont contends that a majority of Ramirez's arguments fail due to waiver. Although there is unquestionably some merit to DuPont's waiver arguments, the Court will address the merits of Ramirez's arguments in an effort to fairly and completely address the motion.

The questions posed to the jury on the verdict form were taken directly from the Eleventh Circuit's Pattern Jury Instructions (Civil Cases) (2005) at 482 (Special Interrogatories to the Jury; Products Liability).  The interrogatories to the jury on the verdict form appropriately reflect the distinction drawn by Florida courts between defect and causation.[2]  See Cassisi v. Maytag Co., 396 So.2d 1140, 1143 (Fla. 1st DCA 1981)(whether a case is founded on strict liability or negligence, the plaintiff must prove: "(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier parted possession with the product.").

Accordingly, the Court determines that the verdict was not inconsistent, and denies the motion to the extent Ramirez asserts that the verdict was inconsistent.

B.   **Weight of the Evidence**

Ramirez also asserts that the jury's verdict in favor of DuPont was contrary to the overwhelming weight of the evidence in the case.  In considering Ramirez's contentions regarding

---

[2] In this diversity case, the Court applied the law of the forum state when addressing substantive issues, such as defining defect and causation.

the weight of the evidence presented at trial, this Court is mindful of the Eleventh Circuit's warning that "[t]he trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow" and is limited to "protect[ing] against manifest injustice in the jury's verdict." <u>Hewitt v. B.F. Goodrich Co.</u>, 732 F.2d 1554, 1556 (11th Cir. 1984).

The Eleventh Circuit explained in <u>Lipphardt v. Durango Steakhouse of Brandon, Inc.</u>, 267 F.3d 1183 (11th Cir. 2001):

> A judge should grant a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. . . . . Because it is critical that a judge does not merely substitute h[er] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence.

<u>Id.</u> at 1186 (internal citations omitted).   Further, the Eleventh Circuit has noted, "When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial." <u>Hewitt</u>, 732 F.2d at 1556.

The Court determines that the jury was presented with numerous plausible reasons for determining that Benlate did not cause Ramirez's cancer.  An exhaustive discussion of each

reason is not warranted here.  However, the Court will provide a brief discussion of some of the bases upon which the jury could have made its findings.  The jury learned from Ramirez that, when he sprayed his crops, he rode inside a closed tractor cab, wore protective clothing from head to toe-- goggles, a mask, a jumpsuit, gloves and boots--and thus, had minimal exposure to the chemicals. (Doc. # 170 at 243-245). In addition, the jury learned from Ramirez that his brother- in-law sprayed the Benlate that Ramirez claims harmed his crops. (Id. at 40-41).

Further, when assessing causation, the jury also considered evidence tending to show that Ramirez has a history of diabetes, morbid obesity, and COPD.  Although hotly disputed by both sides, the jury also heard testimony about Ramirez's family history of cancer and history of smoking cigarettes.[3]

In addition, Dr. Cohen and Dr. Hadley presented testimony tending to show that the Benlate in question did not contain contaminates at a level high enough to cause Ramirez's injuries.  (Doc. # 169 at 183-187).  In finding that the

---

[3]   Both sides submitted evidence on these disputed issues, and the jury was free to consider the evidence and make a credibility determination.

Benlate did not cause Ramirez's injuries, the jury was free to consider and credit this testimony.

After due consideration and review of the record, the Court finds that Ramirez has not satisfied the high burden required for securing a new trial or a judgment as a matter of law on the basis of the weight of the evidence. Accordingly, the Court denies the motion to the extent that it asserts that the verdict was entered against the great weight of the evidence.

### C.   Dr. Cohen's Testimony

In his motion, Ramirez attacks Dr. Cohen, one of DuPont's experts, with the following contentions: (1) "he never examined the Plaintiff" and did not even know about the pancreatic tumor; (2) he is "a pathologist and microbiologist" and "not a clinician;" (3) "DuPont was very selective in what information was fed to Dr. Cohen;" and (4) "Dr. Cohen's medical evidence to support his opinion that he simply did not know what caused Plaintiff's cancer and tumors was flawed and inadmissible under Daubert, since it was merely [his] subjective belief or unsupported speculation . . . ." (Doc. # 165 at 2-3).

None of Ramirez's arguments concerning Dr. Cohen supports Ramirez's various requests for post-trial relief.  As stated

by DuPont, Ramirez's "argument that Dr. Cohen's testimony was inadmissible under <u>Daubert</u> is confusing and muddled.  It is a series of factual assertions that are either inaccurate, irrelevant, or go to the weight, not the admissibility, of Dr. Cohen's testimony." (Doc. # 173 at 9).

The fact that Dr. Cohen never examined Ramirez is irrelevant to the admissibility of Dr. Cohen's testimony, and is, at best, a matter to be addressed on cross-examination, and is not a basis for exclusion of Dr. Cohen.  Further, Ramirez's argument that Dr. Cohen did not know about the pancreatic tumor is inaccurate.  During the trial, Dr. Cohen testified that the pancreatic tumor appears to be an "islet cell tumor," is probably benign, and was not caused by exposure to Benlate. (Doc. #  169 at 156-57, 161, 180, 193-94).

In addition, Ramirez's remark that Dr. Cohen is not a "clinician" is not accurate.  Dr. Cohen testified that, although he is a pathologist, he considers himself to be a clinician because he works with patients "and deal[s] with patient concerns." (<u>Id.</u> at 202-203).  As to Ramirez's related challenge of Dr. Cohen's credentials, such argument is rejected.  Dr. Cohen has an M.D. and Ph.D. in cancer research and surgical pathology. (Doc. # 169 at 142, 153).   He has

dedicated his career to the causes of cancer, including chemicals as causes of cancer. (Id. at 142-158). Ramirez's contention that Dr. Cohen's expert opinion was flawed by improper and speculative reasoning is inaccurate and not supported by the record. Further, Ramirez's remark that "DuPont was very selective in what information was fed to Dr. Cohen," suggesting that DuPont somehow restricted Dr. Cohen's access to information about this case, is also incorrect. Dr. Cohen testified that, in reaching his opinion, he reviewed--in addition to documents provided by DuPont--extensive materials, including scientific literature, publically available documents, EPA documents, Ramirez's medical files, and the depositions of Ramirez and Dr. Bloome. (Doc. # 169 at 160-161). Thus, this contention is rejected.

Finally, Ramirez appears to contend that Dr. Cohen never testified as to the cause of Ramirez's cancer, and does not pass muster under Daubert.[4] These arguments lack merit. Ramirez, as the plaintiff, bore the burden of proving each element of his claims to the jury. DuPont did not have the burden to prove--and its expert did not need to testify about

---

[4] Ramirez argues in his motion that Dr. Cohen did not perform a differential diagnosis and did not opine about the causes of Ramirez's cancer. (Doc. # 165 at 2).

11

--what actually caused Ramirez's injuries.  That was a burden to be shouldered by Ramirez and his expert, Dr. Bloome. DuPont argued, and Dr. Cohen opined, that Benlate did not cause Ramirez's injuries.  The fact that Dr. Cohen did not opine as to the cause of Ramirez's injuries is of no matter and is not a basis for the exclusion of Dr. Cohen.  Thus, to the extent Ramirez challenges Dr. Cohen's testimony, credentials, or methodology under <u>Daubert</u> or any other basis, Ramirez's motion is denied.

In conclusion, Ramirez failed to demonstrate that the jury's verdict was rendered against the great weight of the evidence, that a miscarriage of justice resulted from the jury's verdict, or that this Court's procedural and evidentiary rulings (including its <u>Daubert</u> determinations and other rulings) affected Ramirez's substantial rights or otherwise caused injustice or prejudice to Ramirez.  Further, the jury's verdict was neither inconsistent, nor was it based on juror confusion or improper expert testimony offered by DuPont.  Accordingly, this Court will not disturb the jury's verdict and denies the motion for a new trial and motion for judgment as a matter of law.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

12

Plaintiff Guillermo Ramirez's Rule 50(b) Motion for Judgment as a Matter of Law and New Trial on Damages, or in the Alternative, Rule 50(b) and Rule 59(a) Motion for New Trial (Doc. # 165) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of December 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record